UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHARON TREVINO,                    §
                                   §
          Plaintiff,               §
                                   §
v.                                 §     CIVIL ACTION NO. 3:08-CV-0889-B
                                   §
UNITED PARCEL SERVICE and          §
RONNIE WEIGANT,                    §
                                   §
          Defendants.              §

## MEMORANDUM ORDER

Before the Court is the Motion of Defendant Ronnie Weigant for Summary Judgment on Plaintiff Sharon Trevino's claims  for retaliation under the Family Medical Leave Act ("FMLA") (doc. 53).  Because Plaintiff has not presented evidence sufficient to establish a *prima facie* case of retaliation against Defendant Weigant in his individual capacity, the Court **GRANTS** the Motion (doc. 53).

## I.

## BACKGROUND[1]

This lawsuit arises from Plaintiff employee's allegations that the actions of Defendant supervisor constituted harassment and retaliation for her exercise of rights protected by the Family medical leave Act ("FMLA").   Plaintiff Sharon Trevino is a "feeder driver" for United Parcel Service, Inc. ("UPS").  In this capacity, Trevino operates tractor-trailer rigs, often at great distances,

---

[1]  Plaintiff also asserts claims against Defendant United Parcel Service, Inc. that are the subject of a separate Motion for Summary Judgment (doc. 57).  This Memorandum Opinion recites only those facts necessary to the consideration of the claims against Defendant Weigant (doc. 53).

between UPS hubs and between UPS facilities and customers.  (Pl. App. p. 2; Def. App. p. 1).

Trevino joined UPS in 1984 as a car washer and was subsequently promoted to fueler and package

car driver before becoming a feeder driver at the Mesquite hub in 1999.  (Sec. Amd. Pet. ¶ 10; Def.

App. p. 1-2).  She was one of the first female feeder truck drivers at the Mesquite hub.  (Pl. App. p.

79).  Each feeder driver is assigned to an "On-Road Supervisor," who manages a group of

approximately 40 feeder drivers.  (Pl. App. p. 66-67).   At the time relevant to Trevino's claims

against Weigant, she was assigned  either to On-Road Supervisor Jake Valenzuela or Brad Nelson.

*Id.*

Defendant Ronnie Weigant is an "On-Road Supervisor" at the Mesquite hub.  (Weigant

Decl.).  Weigant joined UPS in 1979 and has served in a variety of supervisory posts since 1984.  He

has worked in his current position as an On-Road Supervisor at the Mesquite hub for approximately

five years.  *Id.*  Weigant has primary managerial responsibility for the approximately 40 feeder drivers

assigned to his group, and supervisory authority, including the authority to counsel and issue warning

letters, over all of the more than 475 feeder drivers at the Mesquite hub.  *Id.*

A.      *Trevino's Medical Condition and FMLA Leave*

Trevino has been diagnosed with depression, panic disorder, anxiety and post-traumatic stress

disorder; she is under ongoing medical treatment for these conditions.  She alleges that her medical

conditions  developed as a result of an incident involving two male UPS supervisors in 2000.  (Pl.

App. p. 45-62).  According to Trevino, two supervisors confined her in an office, blocking the door

as they yelled and reprimanded her.  (doc. 64-5 at p. 2).  Defendant UPS disputes Trevino's account

of the incident and her conclusion  that the incident caused her medical conditions.  (doc. 54 p. 3).

All parties agree that Defendant Weigant had no involvement in that incident, and there is no

indication in the record that he was aware of it.

As a consequence of her health conditions, Trevino has requested, and UPS has approved, leave under the FMLA on at least nine separate occasions since November 2000.  (Def. App. p. 47-69; Pl. App. p. 19-40).  Both parties agree that the authority to approve requests for FMLA rests with District Occupational Halth Manager Thelma Lee.  (Def. App. p. 140-41; Def. App. p. 29).

In July 2005, Trevino alleges that she was called into a meeting by Division Manager Mike Kelly in which she discussed a variety of issues, including her panic attacks and medical diagnoses, her working conditions, and to which On-Road Supervisor she would report.  (Pl. App. p. 75-77). Trevino testified that the 2005 meeting also included Employee Relations Manager Etta Gray and Safety Manager Claude Rigsby.  *Id.*  Trevino  testified that Mr. Kelly agreed that Brad Nelson would continue to act as Trevino's On-Road Supervisor.  Trevino further contends that she was told that she could also deal with On-Road Supervisors Art Sanchez and Jake Valenzuela, but that she would not be required to have contact with other supervisors.  (doc. 68-2, p. 11-12).  As a result of the decisions made at the meeting, Trevino alleges that Weigant was instructed not to contact her.  *Id.* Weigant denies that he had any knowledge of a July 2005 meeting, that he was ever instructed by management not to contact Trevino, or that he was ever apprised of her medical conditions.  (Pl. App. p. 75).

B.    *Alleged Retaliatory Actions Involving Weigant*

The record includes evidence of two  interactions between Trevino and Weigant, both after the 2005 meeting, that form the basis for Trevino's retaliation claims.  The first incident occurred in April 2007, when Weigant spoke with Trevino after observing what he believed to be her violation of UPS safety procedures at a loading door.  Weigant testified that he observed Trevino "pull away

from a loading door while a part-time loader was still in the trailer," and that he thought the situation was unsafe. (Def. App. p. 2; Def. App. p. 31). Weigant immediately stopped Trevino and spoke with her about what he perceived to be a safety violation and instructed her on company safety procedures, which include checking the trailer prior to pulling away from the loading door. *Id.* Trevino filed a grievance, maintaining that she had in fact followed the company safety procedures, but the part-time loader entered her trailer after she checked it. *Id.* Trevino does not allege any further interaction with Weigant regarding the April 2007 incident.

Second, Trevino alleges that Weigant violated her protected rights when he attempted to hold a disciplinary hearing with her on December 3, 2007. Weigant testified that Trevino's On-Road Supervisor at the time, Jake Valenzuela (who was leaving for a vacation), had asked him to conduct a hearing with Trevino regarding her failure to "outbound"[2] a trailer on November 20, 2007. (Def. App. p. 2). Because Trevino had previously been issued a Warning Letter in September for failure to report to work at the designated time, Weigant testified he was instructed to meet with Trevino regarding the incident of November 20, and issue a notice of intent to suspend pursuant to the collective bargaining agreement. *Id.*

Weigant contends that "for several days" he left instructions with the employees at the dispatch office, where feeder drivers begin and finish their work days, for Trevino to come to Wiegant's office for a hearing. (*Id.*; Pl. App. p. 69). He testified that Trevino ignored those instructions, and that on December 3, 2007 he approached her in the dispatch office to initiate the hearing. *Id;* (Def. App. p. 178). Weigant testified that despite several requests, Trevino refused to

---

[2]"Outbound" is a UPS term for the procedure used to verify which trailer a driver was taking from the package center, so that other personnel could update the tracking system for the packages onboard.

-4-

come to the meeting. *Id.* Weigant then left the room and asked a union steward to instruct Trevino to come to Weigant's office for a hearing. Trevino denies refusing to follow Weigant's instructions, and testified that when Weigant left the room, she began having a panic attack. (Pl. App.. p. 13). When Weigant returned to the dispatch office to ask if Trevino was coming to the hearing, Trevino informed him she was having a panic attack. Trevino then locked herself in the bathroom, where her symptoms worsened, and she called 911. Other members of the UPS management arrived, and Weigant left to meet the ambulance at the gate. Trevino left the UPS facility in an ambulance. (Def. App. p. 28; Pl. App. p. 71).

Following the incident, Division Manager Mark Lopes conferred with Labor Relations Manager Sue Dunphy and Transportation Service Manager Ben Mezechenko and decided to terminate Trevino on the stated grounds of "gross insubordination." (Def. App. p. 177, 186). Mr. Lopes signed Trevino's termination letter, dated December 13, 2007. (Def. App. p. 238).

Trevino filed a grievance over the termination and, following a deadlock by the UPS-Teamsters Union Deadlock Committee, UPS and the Union settled the grievance. Trevino was reinstated with full back pay and benefits and returned to her position as a feeder driver at the Mesquite hub. (Def. App. p. 186).

On May 28, 2008, Trevino filed this suit against UPS and Weigant, asserting claims for discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), discrimination, harassment, and retaliation under the Americans with Disabilities Act ("ADA"), retaliation under the FMLA, and intentional infliction of emotional distress ("IIED"). (doc 1). The parties stipulated to the dismissal with prejudice of Trevino's claims for IIED and her claims against Weigant under Title VII and the ADA. (doc. 52). Weigant now moves for summary

judgment on the remaining FMLA claims.

## II.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law.  FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069 1075 (5th Cir. 1994).  Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material."  *Anderson v. Liberty Lobby*, 477 U.S. 242,248 (1986).

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists.  *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990).  Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case.  Rather, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case.  *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate.  *Little*, 37 F.3d at 1075 (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986)).  "This burden is not satisfied with 'some metaphysical doubt as to material facts,'" . . . by 'conclusory allegations,' . . .by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Id.*  (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)).  The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for

the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Id.* at 301.

## III.

## ANALYSIS

Trevino claims that Weigant's actions constitute "a campaign of harassment" that was due to "exercising her rights under" the FMLA. (Sec. Amd. Compl. ¶¶ 72-73). The FMLA allows eligible employees working for covered employers to take a reasonable leave of absence for certain enumerated reasons, including medical reasons, without fear fo losing their jobs as a result. 29 U.S.C. § 2601 (b); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001). The Fifth Circuit has explained that the statute contains both prescriptive and proscriptive components. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). The prescriptive provision "creates a series of substantive rights or entitlements," including, for example, the right to up to 12 weeks of unpaid leave and the right to "return to the same period after a qualified absence." *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 580 (5th Cir. 2006). The proscriptive aspect of the FMLA protects employees from retaliation or discrimination for exercising their rights under the statute. *Nero*, 167 F.3d at 927. Trevino's claims against Weigant allege violations of the later provision.

Absent direct evidence of discriminatory intent, the Fifth Circuit applies the "familiar *McDonnell-Douglas* burden shifting framework" to claims of retaliation under the FMLA. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005); *Powers v. Woodlands Religious Community, Inc.*, 323 Fed. Appx. 300, 302 (5th Cir. 2009) ("Because [Plaintiff] produced only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas Corp v. Green*

guides our inquiry."). Under this framework, the employee, Trevino, must first meet her burden of establishing a *prima facie* case of retaliation. *Richardson*, 434 F.3d at 332. If Trevino succeeds in making a *prima facie* case, the burden shifts to Weigant to "articulate a legitimate, nondiscriminatory or non-retaliatory reason" for his action. *Hunt*, 277 F.3d at 768. If Weigant does so, Trevino must produce evidence sufficient to support a finding by the preponderance of the evidence, that Weigant's reason is a pretext for retaliation. *Id.*; *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

      A.    *Trevino's Prima Facie Case*

      To make a *prima facie* case of retaliation under the FMLA, Trevino must present evidence that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768.

      To establish the first element, protection under the FMLA, Plaintiff must present evidence both that she is an eligible employee and that Defendant is a covered employer. *Id.*; *Burris v. Brazell*, No. 3:06-CV09814-K, 2008 WL 5220578 at *3 (N.D. Tex. Dec. 15, 2008). Weigant does not challenge Trevino's assertion that she is an eligible employee under the FMLA, and UPS has consistently treated her as such, approving multiple requests for leave under the FMLA for the conditions described above. The parties dispute, however, whether Weigant is a covered employer who may be held liable in his individual capacity under the FMLA. Weigant argues that he is not an employer under the statute because he had no authority over Trevino's FMLA leave and because

he was not the "decision-maker" for any adverse employment action that forms the basis for Trevino's suit.  (doc. 72 at 2).  Trevino responds that because Weigant was acting on behalf of the employer and had supervisory authority over Trevino, he may be held liable under the FMLA.

       i.      <u>Elligible Employer Under the FMLA</u>

The statute defines the term employer to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I).  Though by its plain language the statute reaches some in their individual capacity, courts, including this one, have found that individual liability has its limits.  *See e.g., Burris,*2008 WL 5220578 at *3; *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (noting summary judgment was proper as to those individual defendants against whom the FMLA offers no relief).  The Fifth Circuit, like the clear majority of courts that have considered the issue, looks to the FLSA when interpreting the reach of the term "employer" under the FLSA.  *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (noting the similarity of the definitions of "employer" under the FMLA and the FLSA when analyzing the reach of individual liability under the FMLA); *see also Johnson v. A.P. Prods., Ltd.*, 934 F.Supp. 625, 628 (S.D. NY 1996) ("the definition of 'employer' in Title VII (and other discrimination statutes, such as the ADA and the Age Discrimination in Employment Act . . .) differs from that used in the FMLA, which tracks verbatim the definition used in the FLSA")).  Whether an individual is an "employer" is a question of law.  *Castillo v. Givens*, 704 F.2d 181, 185 (5th Cir. 1983).

Individual liability as an employer under this standard is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively

dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993). Yet individual liability does not automatically accompany supervisory responsibility; even among those in "supervisory positions" the "FMLA does not contemplate holding individuals liable for corporate violations." *Burris*, 2008 WL 5220578 at *3. For liability to attach, an individual must "independently exercise control over the work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984). This requires both a sufficient level of control and a nexus to the protected rights at issue. *Id.* at 972 (holding individual liable because "[i]t was only he who could authorize compliance with the Fair Labor Standards Act"). Courts look to factors such as control over hiring and firing, wages, and workplace conditions in determining status as an employer. *Id*; *Reich*, 998 F.2d at 329; *Dole v. Continental Cuisine, Inc.*, 751 F.Supp. 799, 802-03 (E.D. Ark. 1990). In analyzing a claim under the FMLA, the question becomes whether the defendant "exercised sufficient control over Plaintiff's ability to take protected leave to qualify as [an] employer[ ] under the FMLA." *Evans v. Henderson*, No. 99-C-8332, 2000 WL 1161075 (N.D. Ill. Aug. 16, 2000).

It is undisputed that Weigant does not have authority to approve or reject applications for leave under the FMLA. Plaintiff instead bases her claims for individual liability on Weigant's supervisory authority as an On-Road Supervisor over all feeder drivers, alleging specifically that his role in attempting to hold a disciplinary hearing imbues him with sufficient control to establish that he is an employer under the FMLA. (Pl. Resp. p. 10-11). Whether Weigant may be held individually liable as an employer depends on whether he exercises the sort of control over the conditions of Trevino's employment that he may be properly held accountable as her employer, and

-10-

whether he exerted control over UPS's compliance with the FMLA.

The record does not contain evidence that Weigant exercises the sort of control that supports his liability as an employer.  Trevino does not allege, nor does the record indicate that Weigant has any authority over the hiring and firing, setting of wages or work schedules, or that he otherwise controls the conditions of Trevino's employment beyond his oversight regarding safety or the delivery schedule.  Though Weigant has some supervisory authority over all feeder drivers, his authority is limited and does not rise to the level of broad control necessary for individual liability as an employer. Weigant's supervisory responsibilities include training drivers, monitoring their compliance with UPS procedures, investigating accidents, and various other duties.  Weigant also has the authority to counsel and issue warning letters to drivers.  There is no indication that Weigant's authority to counsel or warn drivers extends beyond the limited sphere of his oversight authority, and Trevino does not contend that Weigant has the authority to issue any discipline more severe than a warning letter.  Authority to enforce compliance with company procedures through limited measures is not sufficient to establish liability as an employer.

Nevertheless, the Court recognizes that employer status does not require complete operational control of working conditions.  *See, e.g., Freemon*, 911 F.Supp. at 331.  Where an individual controls the employer's compliance with the FMLA or the employee's exercise of rights under the FMLA, he may be appropriately held liable in his individual capacity.  The record, however, contains no evidence that Weigant plays any significant role in receiving, processing, or approving leave under the FMLA.  Trevino does not contend that her requests for FMLA leave went through Weigant or that Weigant was ever consulted regarding any of her FMLA requests.  As a

-11-

result, Trevino cannot establish that Weigant is a covered employer under the FMLA, an essential element of her *prima facie* case.

       ii.    <u>Connection to the FMLA and Pretext</u>

Trevino's attempt to establish a *prima facie* case against Weigant fails for the additional reason that she has produced no evidence that Weigant knew her exercise of protected FMLA rights when he counseled her in April 2007 or attempted to hold a hearing in December 2007. To establish the third element of her a *prima facie* case of FMLA retaliation, Trevino must present evidence linking the adverse employment action to the exercise of FMLA rights. *See, e.g., Burris*, 5220578 WL at *3 (finding plaintiff did not establish *prima facie* case of FMLA retaliation where no evidence was presented that indicated the individuals involved in her termination knew of leave request). Trevino argues only that Weigant may have been aware of her underlying medical condition. (Pl. Resp. at 6). Moreover, Weigant's involvement in the allegedly retaliatory employment decisions involving Trevino was limited to his role as a witness; Trevino does not deny that the decision to terminate her was made by Weigant's superiors. The evidence at most shows that Wiegant's observations were considered by the decision makers at UPS, and such action is insufficient to establish a *prima facie* case of retaliation against him in his individual capacity.

These same evidentiary deficiencies are also fatal to Trevino's efforts to overcome the legitimate, non-retaliatory reasons Weigant articulated for his actions. Weigant contends that his interaction with Trevino in April 2007 stemmed from his observation of what he believed to be a violation of safety procedures. (doc. 54 p. 11). Weigant asserts that his attempts to hold a hearing with Trevino in December 2007 were grounded in reports he received from another supervisor that

Trevino had violated company policy. *Id.* Even if Trevino had established a *prima facie* case of retaliation, she has not, as discussed above, presented evidence sufficient to allow a reasonable jury to conclude that Weigant's proffered reasons for his interactions with Trevino were pretext for retaliation.

## IV.  Conclusion

For the reasons stated above, the Court finds that Trevino has failed to establish a *prima facie* case of FMLA retaliation as to Weigant in his individual capacity.   Accordingly, the Court **GRANTS** defendant Ronnie Weigant's Motion for Summary Judgment (doc. 53).

SO ORDERED

SIGNED: OCTOBER 5,  2009


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE